COURT OF APPEALS OF VIRGINIA

Present: Judges Fitzpatrick, Overton and Senior Judge Duff
Argued at Alexandria, Virginia


FUNCTION ENTERPRISES, INC. and
 TRANSPORTATION INSURANCE COMPANY
                                          MEMORANDUM OPINION[*] BY
v.          Record No. 2814-96-4          JUDGE NELSON T. OVERTON
                                               JULY 15, 1997
ROD FREDERICK BROWN


              FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

              Jonathan S. Rochkind (Law Offices of Stuart
              L. Plotnick, on brief), for appellants.

              Craig A. Brown (Ashcraft & Gerel, on brief),
              for appellee.


     On appeal from the full commission's award of compensation

to Rod Brown (claimant), Function Enterprises, Inc. and

Transportation Insurance Company (collectively referred to as

employer) contend that the commission erred in its calculation of

claimant's average weekly wage.  For the reasons that follow, we

reverse the decision of the commission.

                            **BACKGROUND**

     On June 3, 1994, claimant suffered a compensable injury

during the course of his employment as a roofer for employer.

Claimant's injury resulted in total incapacity from June 3, 1994

through February 12, 1995, and partial incapacity from February

13 through May 24, 1995 and continuing.

     At the time of his injury, claimant had been working on a

_____

     [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

"government employees job" for twelve days and had been receiving a "wage above what he made as a regular rate." Prior to this assignment, claimant had done little government work. Following claimant's injury, employer was involved in this government project for "several months."

Upon his return to work on February 13, 1995, employer offered claimant light duty pursuant to the doctor's recommendation. However, approximately six months later, claimant was terminated from Function Enterprises. The grounds for his termination included several managers' "dissatisfaction with his performance" of various assigned tasks, improper time reporting, failure to work according to "company standards," laziness, and being late to work.

A hearing regarding claimant's benefits was held on February 29, 1996. The parties stipulated that employer paid claimant "benefits at the weekly rate of $450.63 for [eight] months, based upon an agreed wage of $675.94." The deputy commissioner found that "the evidence here fails to demonstrate that the claimant was terminated for justified cause . . . . The fact that the claimant does not perform his job well is not a basis for finding that he was terminated for justified cause." Additionally, the deputy commissioner concluded that "the payment of compensation for [eight] months by the employer's carrier resulted in a de facto award. Therefore, the employer is estopped from challenging the average weekly wage figure upon which those prior

2

payments were based." Finally, the deputy commissioner found that claimant suffered a wage loss from May 24, 1995 and awarded him benefits.

The full commission affirmed the deputy commissioner's opinion, stating that "in order to bar future temporary partial disability benefits, the employer must prove that the claimant was involved in willful and deliberate misbehavior. Inability to perform well is not a basis for a finding of termination for 'justified cause.'" Additionally, the commission determined that, at the time of his injury, claimant had been making $675 per week in a government job covered by the Davis Bacon Act, and that claimant had performed this particular job for only twelve days prior to his accident. "[I]n the fifty-two weeks prior to the injury," claimant's typical weekly wage, not including the government job, had been $331.[1]

After acknowledging that the average weekly wage had "been established by a de facto award," the commission rejected the employer's proposed Code § 65.2-101(1)(a) fifty-two week calculation, and found as follows:

> In this case, the claimant was working as a roofer for a roofing contractor. He earned an average of $331.00 per week for fifty-two weeks before the accident, although at the time of the accident and twelve days previously he had been earning, by his testimony, $675.00 per week. The evidence establishes that he would have continued to

---

[1]Claimant agreed that in the fifty-two weeks prior to his injury he had earned the lower rate, but testified that he had expected the government job to last a year.

earn the $675.00 per week for at least a
year.

The commission then amended the average weekly wage of $675 to
the amount of $503, "which is the average of the two proposed
figures," and affirmed the deputy commissioner's opinion as so
modified.

## MODIFICATION OF THE AVERAGE WEEKLY WAGE

Employer argues that the commission erred in its calculation
of claimant's average weekly wage by averaging the weekly wage
claimed by the employer and the weekly wage claimed by the
employee.  We agree that the commission's calculation was
incorrect.

> It [is] the duty of the Commission to
> make the best possible estimate of future
> impairments of earnings from the evidence
> adduced at the hearing, and to determine the
> average weekly wage . . . . This is a
> question of fact to be determined by the
> Commission which, if based on credible
> evidence, will not be disturbed on appeal.

Pilot Freight Carriers, Inc. v. Reeves, 1 Va. App. 435, 441, 339
S.E.2d 570, 573 (1986).  "The commission is guided by statute in
determining average weekly wage."  Dominion Associates Group,
Inc., et al. v. Queen, 17 Va. App. 764, 766, 441 S.E.2d 45, 46
(1994).  Code § 65.2-101(1)(a) defines "average weekly wage" as
follows:

> The earnings of the insured employee in the
> employment in which he was working at the
> time of the injury during the period of
> fifty-two weeks immediately preceding the
> date of the injury, divided by fifty-two
> . . . . When the employment prior to the
> injury extended over a period of less than

4

fifty-two weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof during which the employee earned wages shall be followed, provided that results fair and just to both parties will be thereby obtained.  When, by reason of a shortness of time during which the employee has been in the employment of his employer or the casual nature or terms of his employment, it is impractical to compute the average weekly wages as above defined, regard shall be had to the average weekly amount which during the fifty-two weeks previous to the injury was earned by a person of the same grade and character employed in the same class of employment in the same locality or community.

Code § 65.2-101(1)(b) further provides that "[w]hen for exceptional reasons the foregoing would be unfair either to the employer or employee, such other method of computing average weekly wages may be resorted to <u>as will most nearly approximate the amount which the injured employee would be earning were it not for the injury</u>."  (Emphasis added).

In the instant case, the commission did not follow the statutory directive of Code § 65.2-101(1)(a) in determining claimant's average weekly wage.  Rather, it found that employer voluntarily paid claimant benefits based on the weekly wage of $675.94 (the amount of the government job), and initially adopted this amount as the average weekly wage.  The record supports this finding, as the parties stipulated that "benefits were paid at the weekly rate of $450.63 for 8 months, based upon an agreed wage of $675.94."

However, the commission deviated from the $675.94 figure.

5

Although the commission failed to state the basis for this deviation, it appears to have averaged the $675.94 figure with the $331 figure proposed by employer to arrive at an average weekly wage fair to both parties in the amount of $503. This calculation is not supported by credible evidence.

Based on the record before us, we find the deputy commissioner's computation "most nearly approximate[s]" the amount claimant would have earned had he not been injured. <u>See</u> Code § 65.2-101(1)(b). As noted above, the full commission found that claimant "would have continued to earn the $675.00 [sic] per week for at least a year." Thus, we reverse the commission's finding as to the wage computation and remand this appeal with direction that the deputy commissioner's findings and determination that $675.94 should be employed as the claimant's weekly wage be reinstated.

<u>Reversed and<br>remanded.</u>

Fitzpatrick, J., dissenting.

I respectfully dissent. The commission found that "[t]he evidence establishes that [claimant] would have continued to earn the $675.00 per week for at least a year." However, claimant's testimony indicates that he expected to earn this amount "[f]or the rest of the year at least." (Emphasis added). Sandra Nobles testified that although the project lasted "[s]everal months," she did not think that it went on "as long as the remainder of the year." (Emphasis added). Claimant was injured in June 1994.

Code § 65.2-101(1)(b) provides that for exceptional reasons, the commission may compute the average weekly wage to most nearly approximate "the amount which the injured employee would be earning were it not for the injury."

While in lieu of the fifty-two week calculation procedure set out in Code § 65.2-101(1)(a), the commission deviated from the statutory formula to determine claimant's average weekly wage, it failed to state the basis for its deviation. However, it clearly may be inferred that the commission considered the $675.94 figure to be unfair to the employer and that it found the ephemeral nature of claimant's employment at the government job to be "exceptional." Evidently, the commission applied Code § 65.2-101(1)(b) and averaged the $675.94 figure with the $331 figure proposed by employer to arrive at an average weekly wage fair to both parties in the amount of $503.

Under the circumstances of this case, the commission fairly

7

approximated the amount claimant would have earned had he not been injured. The weekly wage that the commission calculated is the "best possible estimate of future impairments of earnings from the evidence adduced at the hearing." Pilot Freight Carriers, Inc. v. Reeves, 1 Va. App. 435, 441, 339 S.E.2d 570, 573 (1986). Credible evidence supports the commission's determination, and I would affirm.