COURT OF APPEALS OF VIRGINIA


Present:  Judges Coleman, Annunziata and Bumgardner
Argued at Salem, Virginia


UNINSURED EMPLOYER'S FUND

                                    MEMORANDUM OPINION[*] BY
v.    Record No. 1338-99-3          JUDGE SAM W. COLEMAN III
                                         MARCH 14, 2000
TONY ALLEN NICHOLS


            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Patricia H. Quillen, Assistant Attorney
            General (Mark L. Earley, Attorney General;
            John J. Beall, Jr., Senior Assistant Attorney
            General, on brief), for appellant.

            William H. Fralin, Jr. (Jolly, Place,
            Fralin & Prillaman, P.C., on brief), for
            appellee.


     The Uninsured Employer's Fund appeals the Workers'

Compensation Commission's decision denying the Fund's application

to terminate benefits based upon a change in condition.

The Fund alleged in its application that the claimant was no

longer disabled from the industrial accident and that his residual

disability was unrelated to the accident.  The Fund argues that

the commission erred in finding that it failed to prove that as of

August 27, 1998, Tony Allen Nichols was no longer disabled as a

_____

     * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

result of the compensable injury.  We disagree and affirm the commission's decision.

BACKGROUND

Nichols was employed as a mechanic by Joseph Wright, trading as Wright's Lawn Service and Automotive Repair (Wright).  On April 20, 1996, while working for Wright, Nichols was repairing a vehicle's carburetor when the carburetor backfired and caused flash burns over twenty percent of Nichols' body, particularly his right upper arm.  Nichols was treated at the University of Virginia Medical Center Burn Center where he underwent skin grafts to the right upper extremity and forearm and to the right hand and three fingers of the right hand.  Nichols filed a claim for and was awarded temporary total disability benefits.  Upon finding that Wright was uninsured, the commission ordered the Fund to satisfy the award.

In June 1997, Nichols underwent a functional capacities evaluation (FCE) which revealed that he was limited in his ability to lift with his left hand.  Also, he was fifty percent deficient in right hand grip strength and was unable to sustain a strong right hand grip for more than two to three seconds at one time. He was found to be limited in carrying things with his right hand, working overhead, crawling, and performing activities requiring fine motor coordination of his right hand.  If Nichols returned to work, the evaluator opined that he would require tools with

- 2 -

built-up handles and that he would be unable to perform activities requiring sustained or strong repetitive right hand grip strength.

On July 21, 1997, the Fund filed an Application for Hearing, alleging that Nichols was released to return to his pre-injury work by Dr. J. Samuel Mitchener, III, a plastic and reconstructive surgeon who had treated Nichols after the accident.  Dr. Mitchener had also previously treated Nichols in 1995 for a blunt trauma injury to the dorsum of his right hand, sustained while working for another employer.  In his report, Dr. Mitchener concluded that Nichols was able to return "to full work," but he noted that Nichols "may have difficulties finding employment given the deficits documented in the FCE."  Dr. Mitchener opined that Nichols could perform "many types" of automotive and lawnmower repairs, despite the fact that he had not been provided a detailed job description of Nichols' pre-injury work duties.  The commission denied the Fund's application.

The Fund filed a second Change in Condition Application, alleging that Nichols was no longer disabled as a result of the industrial accident and, except for a residual disability from a prior unrelated blunt trauma injury, that Nichols would have been able to return to his pre-injury work as of August 27, 1998.  The Fund based its application upon Dr. Mitchener's report dated August 27, 1998.

The only evidence in the record delineating Nichols' pre-injury job duties is his affidavit stating that, as a shop mechanic and supervisor, he was required routinely to perform many tasks involving fine manipulation of objects with both hands, many tasks requiring a strong right hand grip for sustained periods, lifting heavy objects from floor to waist and carrying objects with both hands, and crawling and working overhead. Prior to the industrial accident, Nichols never required the use of tools with "built-up handles" to perform his work.

In June 1998, the Fund set forth in a letter to Dr. Mitchener the pre-injury job duties as described by Nichols in his affidavit. Dr. Mitchener had no other information detailing Nichols' pre-injury job duties. The Fund requested that Dr. Mitchener evaluate Nichols and respond to several queries.

Nichols was examined by Dr. Mitchener, and in an August 27, 1998 letter, Dr. Mitchener opined that Nichols was not disabled due to the burn injury; he stated that "it appears that any disability . . . may be related to the blunt trauma injury of September 22, 1995." Dr. Mitchener "strongly suspected" that if Nichols had only the burn injury, he would be able to return to his pre-injury status as an auto mechanic and supervisor. Dr. Mitchener further noted that Nichols had grip strength problems, but Dr. Mitchener attributed the problems "almost entirely" to the blunt trauma injury rather than the burn injury. Dr. Mitchener

opined that Nichols would not likely obtain pre-injury status and that he would have permanent restrictions based on the lack of complete extension of the right small finger. Dr. Mitchener noted that Nichols also demonstrated signs of peripheral nerve irritation and/or compression of unknown etiology. Dr. Mitchener opined that the pain Nichols experiences in the right upper extremity was either related to ulnar nerve compression at the right elbow or median nerve compression at the wrist and recommended that Nichols obtain a complete neurological evaluation.

The commission found that the Fund failed to prove that Nichols was able to perform his pre-injury work. The commission noted that Nichols was able to perform his pre-injury work prior to the industrial accident despite the pre-existing decreased range of motion in the right fifth digit due to the 1995 blunt trauma injury. The commission found that Nichols' inability to perform his pre-injury work is evident from Dr. Mitchener's August 27, 1998 report in which Dr. Mitchener noted that Nichols still experiences grip strength problems, even though Dr. Mitchener attributed the problems "almost entirely to the earlier blunt trauma injury." The commission found that the Fund had failed to prove that the peripheral neuropathy, which prevented Nichols from performing a number of significant pre-injury work duties, was not related to the industrial accident. The commission noted that the

neuropathy was not present before the industrial accident and that it was to an area of the body where Nichols sustained extensive burns and skin grafts.

ANALYSIS

"In an application for review of an award on the ground of change in condition, the burden is on the party alleging such change to prove his allegations by a preponderance of the evidence." Pilot Freight Carriers, Inc. v. Reeves, 1 Va. App. 435, 438-39, 339 S.E.2d 570, 572 (1986). On appeal, we view the evidence in the light most favorable to Nichols, the prevailing party. See R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990). We accept the commission's factual findings when they are supported by credible evidence. See James v. Capitol Steel Constr. Co., 8 Va. App. 512, 515, 382 S.E.2d 487, 488 (1989).

The commission found that the Fund failed to prove by a preponderance of the evidence that Nichols' residual incapacity was not related to the industrial accident. The commission stated that:

> [T]he pre-existing [blunt trauma] injury was
> to the dorsum of the right hand. In the
> industrial accident the claimant suffered
> partial and full thickness burns
> circumferentially of the right upper
> extremity from the hand to the shoulder.
> Dr. Mitchener opined that the claimant
> exhibited symptoms of peripheral nerve
> compression at the elbow or wrist, an area
> encompassed by the burn injury and not by

- 6 -

> the pre-existing injury . . . . [I]t appears
> that these symptoms may be tied in some
> fashion to the claimant's assertion that he
> cannot now grip with his right hand.

The commission noted further that because Dr. Mitchener recommended referral to a neurologist to determine the cause of Nichols' peripheral neuropathy in his right upper extremity, the commission would not presume that the condition, which had not existed prior to the burn injury, was not related to the burn injury. The commission noted that Nichols' blunt trauma injury occurred before Nichols began working for Wright and that nothing in the record indicates that Nichols' pre-injury work performance was affected by that injury. No evidence exists to indicate that he experienced grip strength deficiencies, that he was unable to perform all the functions of the job, or that he required the use of special tools.

The commission articulated legitimate reasons for giving little probative weight to Dr. Mitchener's opinions. "Medical evidence is not necessarily conclusive, but is subject to the commission's consideration and weighing." Hungerford Mechanical Corp. v. Hobson, 11 Va. App. 675, 677, 401 S.E.2d 213, 215 (1991). Contrary to the Fund's contention, the burden of proof was on the Fund, whose change in condition application alleged that Nichols' residual incapacity was unrelated to his industrial accident, to prove that the disability resulting from the irritation or

degeneration of the nerves in Nichols' right hand was not caused by the industrial accident.

Here, the commission found that the Fund failed to carry its burden of proof in that Dr. Mitchener's evidence did not persuade them that Nichols' residual incapacity, specifically the lack of grip strength in the right hand, was unrelated to the industrial accident. Admittedly, Dr. Mitchener opined that Nichols' lack of grip strength was unrelated to the industrial accident and that it probably was caused by "peripheral nerve irritation and/or compression, etiology unknown." The commission, however, was not required to accept Dr. Mitchener's conclusory opinion as to causation, nor was the commission required to conclude from Dr. Mitchener's opinion that because the etiology of the nerve irritation or degeneration was unknown, that the Fund had met its burden of proving that the disability was not caused by the industrial accident. Quite simply, the commission found that the Fund's evidence, which consisted of little more than one doctor's opinion that the cause of Nichols' nerve irritation or degeneration was unknown, was not convincing, and therefore, not sufficient to persuade it that Nichols' residual disability was unrelated to the burns and skin grafts that this twenty-year-old laborer had suffered.

Because the evidence supports the commission's holding that the Fund did not prove that Nichols' disability was unrelated to

his compensable injury, we affirm the commission's denial of the Fund's application for termination of benefits.

Affirmed.