COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Coleman and Willis


HERBERT FELIX STACY, JR.
                                  MEMORANDUM OPINION*
v.    Record No. 0661-00-3             PER CURIAM
                                     JULY 18, 2000
WESTMORELAND COAL COMPANY


             FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

             (P. Heith Reynolds; Wolfe & Farmer, on
             brief), for appellant.

             (Michael F. Blair; Penn, Stuart & Eskridge,
             on brief), for appellee.


     Herbert Felix Stacy, Jr. contends that the Workers'

Compensation Commission (1) erred in finding that he failed to

prove that the 1998 medical treatment for his left knee was

causally related to his August 15, 1990 compensable injury by

accident; (2) improperly issued a decision where only two

commissioners participated; and (3) issued an invalid decision

because one of the two commissioners who participated rendered a

dissenting opinion.  Upon reviewing the record and the briefs of

the parties, we conclude that this appeal is without merit.

Accordingly, we summarily affirm the commission's decision.  See

Rule 5A:27.

―――――――――――――――――――

     * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

"General principles of workman's compensation law provide that '[i]n an application for review of any award on the ground of change in condition, the burden is on the party alleging such change to prove his allegations by a preponderance of the evidence.'" Great Atl. & Pac. Tea Co. v. Bateman, 4 Va. App. 459, 464, 359 S.E.2d 98, 101 (1987) (quoting Pilot Freight Carriers, Inc. v. Reeves, 1 Va. App. 435, 438-39, 339 S.E.2d 570, 572 (1986)). Unless we can say as a matter of law that Stacy's evidence sustained his burden of proof, the commission's findings are binding and conclusive upon us. See Tomko v. Michael's Plastering. Co., 210 Va. 697, 699, 173 S.E.2d 833, 835 (1970).

On appeal, we view the evidence in the light most favorable to the prevailing party below. See R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990). So viewed, the evidence established that on August 15, 1990, while working for employer as a mine helper, Stacy suffered a compensable left knee injury. On August 23, 1990, Dr. Kenneth D. Kiser noted no complaints by Stacy and reported a stable ligament, no effusions, and normal range of motion. Dr. Kiser diagnosed a resolved medial collateral ligament strain and released Stacy to return to work.

Stacy testified that he suffered constant left knee pain after the August 1990 accident. He admitted, however, that he

continued working in the mines, except for a few days immediately after that accident. Stacy did not seek medical treatment for any left knee problems between August 1990 and May 1998, although he sought medical treatment for various other types of injuries. Stacy admitted and the medical records confirmed that he also suffered from left knee problems before the August 1990 accident.

Stacy testified that on May 14, 1998, his pain worsened when he was vacuuming and his knee popped. At the hospital emergency room, Stacy reported that he "was vacuuming his home, slipped, left leg twisted, says it moved sideways, and then he heard a popping sound. Says at that time he felt his entire leg go numb." Stacy did not report a history of the August 1990 knee incident to the emergency room personnel.

On May 26, 1998, Dr. James R. Schwartz, an orthopedic surgeon, treated Stacy for the first time and recorded a history of "vacuuming in the house a week ago and [his] knee popped." Dr. Schwartz also recorded a history of a 1987 or 1988 knee injury, but no history of an August 1990 knee injury.

On June 2, 1998, Stacy's physical therapist noted the vacuuming incident and that Stacy's knee problems began in 1987 or 1988 when he was working in the mines. The physical therapist also noted that Stacy continued working after the 1987 or 1988 incidents and had "only had soreness in the left knee

during bad weather since that time until these recent occurrences."

On July 14, 1998, Dr. Schwartz performed arthroscopic surgery on Stacy's left knee.  Dr. Schwartz diagnosed an anterior cruciate ligament tear, a bucket-handle medial meniscus tear, and post-traumatic arthrosis, left knee.  In his deposition, Dr. Schwartz opined that the bucket-handle tear occurred with the vacuuming incident, that the anterior cruciate ligament tear was probably the result of a very old cruciate ligament tear, and that the joint surface damage was very old.

In August 1998, Dr. Schwartz performed total knee replacement surgery on Stacy's left knee.  Dr. Schwartz admitted that he neither received a specific history from Stacy regarding an August 5, 1990 injury nor did he have any information regarding Stacy's pre-1990 knee injuries.  Even so, in his December 17, 1998 deposition, Dr. Schwartz agreed, within a reasonable degree of medical certainty, that the August 5, 1990 injury resulted in the total knee replacement.  Ten health insurance claim forms submitted by Dr. Schwartz's office prior to the February 9, 1999 hearing, for treatment rendered by Dr. Schwartz to Stacy between May 1998 and October 1998, indicated that Stacy's injury occurred on May 18, 1998 and was not related to his employment.

On October 27, 1998, Dr. Nabil Ahmad examined Stacy and reported that Stacy first injured his left knee in 1985 while working in the mines. Dr. Ahmad noted that Stacy continued to work in the mines and that his symptoms did not get severe until May 1998. Dr. Ahmad diagnosed possible reflex sympathetic dystrophy of the left leg and knee. Although Dr. Ahmad treated Stacy on several occasions, Stacy did not tell Dr. Ahmad about the August 5, 1990 injury until January 12, 1999. In response to a questionnaire from Stacy's attorney, Dr. Ahmad checked "yes" to the question of whether Stacy's RSD was related to the August 15, 1990 injury.

On February 8, 1999, Dr. William A. McIlwain, an orthopedic surgeon, who examined Stacy at employer's request, opined as follows:

> I do not think that there is a way to say, with any degree of medical certainty or probability at all, that the injury of 1990 led to the total knee [replacement] of 1998. This is especially so since the knee demonstrated degenerative changes in 1985 that were "severe." Additionally, his records indicate that he was doing fairly strenuous labor with no particular lost time or problems over those years.

"Medical evidence is not necessarily conclusive, but is subject to the commission's consideration and weighing." Hungerford Mechanical Corp. v. Hobson, 11 Va. App. 675, 677, 401 S.E.2d 213, 215 (1991). Moreover, "[q]uestions raised by conflicting medical opinions must be decided by the commission."

- 5 -

<u>Penley v. Island Creek Coal Co.</u>, 8 Va. App. 310, 318, 381 S.E.2d 231, 236 (1989).

The commission weighed the conflicting medical evidence and articulated its reasons for rejecting the opinions of Drs. Schwartz and Ahmad regarding causation.  In addition to the conflicting medical evidence, the record contains the following credible evidence:  Dr. Schwartz's admitted lack of information regarding Stacy's pre-1990 knee problems; Dr. Schwartz's opinion regarding causation contained on the health claim forms; Dr. Ahmad's lack of knowledge of the August 1990 injury until January 1999; Stacy's ability to continue working in the mines between August 1990 and May 1998; the lack of any medical treatment for left knee problems between August 1990 and May 1998; and the intervening May 1998 vacuuming incident.  The commission, as fact finder, was entitled to conclude from this evidence that Stacy failed to prove by a preponderance of the evidence that the medical treatment for his left knee problems beginning in May 1998 was causally related to the August 1990 accident.

## II. and III.

Stacy contends that the commission's opinion is invalid because two commissioners and one deputy commissioner participated in the decision.  Stacy also alleges that the decision was invalid because one of the two commissioners issued a dissent.

- 6 -

Stacy failed to raise these procedural issues before the commission either in the form of an objection, a motion for reconsideration, or a motion to vacate the opinion within thirty days.  Thus, we are barred by Rule 5A:18 from considering these issues on appeal.  See Overland Door Co. v. Lewis, 29 Va. App. 52, 62, 509 S.E.2d 535, 539-40 (1999).  Moreover, the record does not reflect any reason to invoke the good cause or ends of justice exceptions to Rule 5A:18.

For these reasons, we affirm the commission's decision.

Affirmed.