COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Annunziata and Clements
Argued at Richmond, Virginia


SCHOOL BOARD OF THE CITY OF NORFOLK

                                    MEMORANDUM OPINION* BY
v.    Record No. 1352-02-2         JUDGE LARRY G. ELDER
                                      DECEMBER 31, 2002
SIMON JORDAN


        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Joan E. Mahoney, Assistant City Attorney
            (Bernard A. Pishko, City Attorney, on
            briefs), for appellant.

            Craig B. Davis (Emroch & Kilduff, on brief),
            for appellee.


        The School Board of the City of Norfolk (employer) appeals

from a decision of the Workers' Compensation Commission (the

commission) refusing to suspend an award of temporary total

disability benefits being paid to Simon Jordan (claimant).  On

appeal, employer contends the appeal should be remanded for

additional findings because no credible evidence supports one of

the commission's essential findings of fact.  It also contends

the evidence failed to prove claimant's ongoing disability is

caused by his compensable industrial injury.  We agree with

employer's position that the commission erroneously concluded

the evidence of causation is unrefuted, and we remand to the

        * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

commission to determine which of the competing medical opinions regarding causation is more credible.

## I.

## BACKGROUND

"In an application for review of an award on the ground of a change in condition, the burden is on the party alleging such change to prove his allegation by a preponderance of the evidence."  Pilot Freight Carriers, Inc. v. Reeves, 1 Va. App. 435, 438-39, 339 S.E.2d 570, 572 (1986).  "Following established principles, we review the evidence in the light most favorable to the prevailing party."  R. G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990).  If credible evidence supports the commission's factual findings, we are required to uphold those findings on review.  See, e.g., Classic Floors, Inc. v. Guy, 9 Va. App. 90, 95, 383 S.E.2d 761, 764 (1989).

At the time of claimant's injury, he worked for employer as a middle school teacher.  On November 22, 2000, the last day of school before Thanksgiving vacation, while claimant was trying to prevent an altercation between two students, one of those students retaliated by "slamm[ing] [claimant] into the lockers in a rage."  When school resumed on November 27, 2000, claimant reported a resulting injury.  He was diagnosed with a back injury and "acute stress disorder."  Employer accepted the injury as compensable and began the voluntary payment of

- 2 -

temporary total disability benefits.  The physician who treated claimant's physical complaints referred him to Dr. Robin Nottingham, a psychologist, who examined claimant on November 30, 2000, and treated claimant regularly through August 2001. Dr. Nottingham referred claimant to a psychiatrist, Patricia King-Jones.  Dr. Nottingham treated claimant in tandem with Dr. King-Jones and wrote on April 2, 2001, that she "deferred [her] return to work decision [regarding claimant] to [Dr. King-Jones]."

When Dr. King-Jones first saw claimant on January 10, 2001, she noted that claimant's November 22, 2000 assault was the third incident of this nature claimant had experienced. Claimant reported the first incident had occurred in January 2000 and the second incident about six months later. Dr. King-Jones noted his symptoms included "fatigue, sadness, insomnia, decreased appetite, poor concentration, nightmares, flashbacks and intense fear and anxiety."  Claimant was concerned that the student was part of a gang and that he might be attacked or killed.  Dr. King-Jones noted his symptoms were "consistent with post-traumatic stress disorder [(PTSD)] and secondary depression."  Dr. King-Jones noted that claimant was taking antidepressant medication, and she opined that claimant was unable to work due to his symptoms.

On March 5, 2001, Dr. King-Jones recommended that claimant "not return to work until he has worked through his anger and

- 3 -

frustration."  During the next several months, she reported claimant was "making progress" but exhibited ongoing depression, anxiety, anger and hypervigilance.  On April 26, 2001, Dr. Nottingham said claimant reported believing "they're 'out to get' him" and that he felt "it's not just paranoia."  Claimant said "he doesn't want to work in an environment that wants to do him in & he [would] possib[ly] 'lose it' & end up in jail.  Cont. to say that if returned to work he would get a gun permit & take gun to work."  On June 21, 2001, Dr. Nottingham referred claimant to an anger management group.

On August 3, 2001, Dr. King-Jones noted that claimant

> has had a fair response to treatment but has continued to have issues related to anger regarding the altercation at Norfolk Public Schools.  [Claimant's] degree of unresolved anger precludes returning him to his previous working environment.  I cannot confirm with any degree of certainty that he will be able to contain his expression of anger.  Returning him to the environment of his attack may jeopardize the safety of others as well as [claimant].

During the spring of 2001, employer sent claimant to Paul Mansheim, a psychiatrist, for an independent medical examination.  Dr. Mansheim conducted a one-hour interview with claimant on May 22, 2001, and reviewed Dr. King-Jones' treatment records for the period from November 30, 2000, to April 25, 2001.  Dr. Mansheim also reviewed legal documents indicating claimant's belief that the principal of his school had subjected him to racially discriminatory treatment during the months

- 4 -

preceding the November 22, 2000 assault by the student.  Those documents apparently also showed that claimant made formal allegations that some of the school's employees had improperly revealed information about SOL testing in advance of administration of the tests.

In summarizing claimant's medical history as culled from Dr. King-Jones' office notes, Dr. Mansheim noted, inter alia, claimant's ongoing reports and diagnoses of anger and depression.  During Dr. Mansheim's clinical interview with claimant, claimant made a comment which Dr. Mansheim interpreted as a threat.  Dr. Mansheim asked claimant to "be calmer in expressing himself," and claimant "apologized and was calmer." Claimant reported during the clinical interview that he experienced ongoing depression and tearfulness.

Dr. Mansheim reviewed the criteria necessary to make a diagnosis of post-traumatic stress disorder.  He concluded that claimant's exhibited symptoms did not support a PTSD diagnosis and that claimant exaggerated his symptoms.  Dr. Mansheim wrote as follows:

> In my opinion, there is no evidence that [claimant] is suffering from a psychiatric disorder which prevents him from doing activities, including work, that he wants to do.  In my opinion, it is most probable that [claimant's] presentation is better accounted for by symptom magnification or even outright malingering.

- 5 -

### Conclusion

> In a May 22, 2001, letter, [employer] asked
> that I evaluate [claimant] in order to
> determine whether or not I agree that
> [claimant] suffers from a disabling
> "post-traumatic stress" after being pushed
> into a locker by a student.  In my opinion,
> there is in fact no psychiatric evidence
> that [claimant] has a psychiatric disorder,
> as a result of a work-related situation,
> which prevents him from being able to do
> anything that he wants to do, including
> work.

Dr. King-Jones subsequently reviewed Dr. Mansheim's opinion letter and prepared her own letter detailing how claimant meets the criteria for a PTSD diagnosis.  She noted it was inappropriate to assume that claimant's poor response to treatment "is motivated by secondary gain unless there are clear indicators to support this assumption.  In [claimant's] case this simply cannot be supported by fact."  She noted Dr. Mansheim's report was flawed because it "[did] not even address [claimant's] fear, avoidance, exposure to cues of the event or his present engagement in previously enjoyed activities," all of which she opined were "pertinent issues to a complete evaluation."

Based on Dr. Mansheim's report, employer alleged that claimant's ongoing disability was unrelated to his industrial injury and sought termination of the outstanding award.

On September 28, 2001, based on a review of the record, the deputy commissioner issued an opinion finding that claimant was

not suffering from PTSD and that any disorder from which he was suffering had not been proved to be causally related to the "locker incident."

After issuance of the deputy commissioner's decision, claimant requested review by the commission and also submitted additional medical records for treatment he received from November 5 to 14, 2001. Employer objected to the commission's considering the documents in claimant's appeal or including the documents in the record.

By opinion issued April 29, 2002, the commission reversed the deputy's decision terminating the outstanding award. It noted that claimant's PTSD diagnosis was controversial but observed that,

> notwithstanding the PTSD controversy, Dr. Nottingham and Dr. King-Jones consistently report psychiatric symptoms experienced by the claimant that relate back to the November 2000 assault. Dr. Mansheim's report fails to include discussion regarding the claimant's depression or anger. Thus, Dr. King-Jones' diagnosis and the opinions with regard to causation of these symptoms are unrefuted.
>
> On these particular facts, the Deputy Commissioner's Opinion is REVERSED.

The commission did not rule on employer's request to exclude the late filed medical records and did not indicate whether it considered those records in reaching its decision.

II.

ANALYSIS

We hold the commission's statement that Dr. Mansheim's report fails to refute claimant's PTSD diagnosis and ongoing disability solely because it "fails to include discussion regarding the claimant's depression or anger" is erroneous, and we remand for additional findings. As employer emphasizes, Dr. Mansheim summarized claimant's recent medical history and noted claimant's ongoing depression and anger as reported on multiple occasions in the medical records Dr. Mansheim reviewed. Claimant also exhibited his ongoing anger during Dr. Mansheim's clinical interview with claimant when claimant made a remark which Dr. Mansheim interpreted as a threat. Dr. Mansheim recounted this incident in his opinion letter and also noted claimant's reports, made directly to Dr. Mansheim, of ongoing depression and tearfulness.

Although Dr. Mansheim did not specifically mention claimant's anger and depression in concluding that claimant had no ongoing psychiatric disorder caused by his industrial injury which prevented him from working, this failure alone does not support the commission's conclusion that "Dr. King-Jones' diagnosis and the opinions with regard to causation of [claimant's ongoing anger and depression] are unrefuted." As detailed above, Dr. Mansheim's opinion letter includes multiple references to claimant's depression and anger as contained in

- 8 -

Dr. King-Jones' medical records, making clear Dr. Mansheim was aware of Dr. King-Jones' opinion that claimant suffered from these conditions and that he considered these conditions in reaching his conclusions on causation.  Thus, although the commission remains free to conclude on remand that Dr. Mansheim's opinion was unpersuasive because he did not discuss the impact of claimant's alleged ongoing anger and depression on his conclusion that claimant had no disabling psychiatric condition, Dr. Mansheim's opinion did not fail, as a matter of law, to refute Dr. King-Jones' opinion.

For these reasons, we reverse and remand for additional findings of fact consistent with this opinion.

<u>Reversed and remanded.</u>