COURT OF APPEALS OF VIRGINIA


Present: Judges Annunziata, Agee and Senior Judge Coleman


NOEL THOMAS WAKELYN, JR.

v.   Record No. 1332-02-2

SPAIN COMMERCIAL INTERIORS, INC. AND
 STATE FARM FIRE & CASUALTY COMPANY

MEMORANDUM OPINION*
PER CURIAM
DECEMBER 31, 2002


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

(Noel Thomas Wakelyn, Jr., pro se, on brief).

(Kathryn Spruill Lingle; Theisen & Lingle,
P.C., on brief), for appellees.


Noel Thomas Wakelyn, Jr. (claimant) contends the Workers' Compensation Commission erred in finding that he failed to prove that (1) he sustained a compensable change-in-condition entitling him to an award of temporary partial disability ("TPD") from May 12, 1999 through August 4, 1999; an award of temporary total disability ("TTD") benefits for August 5, 1999 and for August 18, 1999 through September 19, 1999; and an award of TPD benefits for August 6 through August 17, 1999 and from September 20, 1999 and continuing; (2) he reasonably marketed his residual work capacity after September 1999, when he began attending college; and (3) his back condition was a compensable consequence of his compensable September 26, 1997 left heel

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

injury. Upon reviewing the record and the parties' briefs, we conclude that this appeal is without merit. Accordingly, we summarily affirm the commission's decision. Rule 5A:27.

## I. Change-in-Condition

"General principles of workman's compensation law provide that 'in an application for review of any award on the ground of change in condition, the burden is on the party alleging such change to prove his allegations by a preponderance of the evidence.'" Great Atl. & Pac. Tea Co. v. Bateman, 4 Va. App. 459, 464, 359 S.E.2d 98, 101 (1987) (quoting Pilot Freight Carriers, Inc. v. Reeves, 1 Va. App. 435, 438-39, 339 S.E.2d 570, 572 (1986)). Unless we can say as a matter of law that claimant's evidence sustained his burden of proof, the commission's findings are binding and conclusive upon us. See Tomko v. Michael's Plastering Co., 210 Va. 697, 699, 173 S.E.2d 833, 835 (1970).

On May 12, 1999, Dr. David Durica issued the following work restrictions for claimant: no lifting over twenty-five pounds for more than two hours per day, no lifting over fifteen pounds for more than eight hours per day, no walking or standing for more than two hours per day without a break or for more than four hours per day without intermittent breaks, no kneeling or squatting for more than two hours per day, no climbing more than one flight of stairs at a time; no climbing ladders, and no twisting or bending more than six times per hour. These

restrictions remained in effect, except for the period from August 18 through September 15, 1999, when claimant was supposed to have been off all work, according to Dr. Durica.

Claimant testified that since May 12, 1999, he had worked for his stepfather at M & M Enterprises installing skirting on house trailers and small decks for house trailers. He admitted that he worked for M & M Enterprises in September 1999. He also worked for Island Installations, doing work similar to his work for Stanley Fixtures, a company that he worked for in July and August 1999. Claimant also worked for Southwest Recreational, where he installed "astroturf" on athletic fields at the College of William and Mary. He claimed that all the work he performed fell within his restrictions issued by Dr. Durica. He also claimed that his supervisor at Stanley Fixtures, Vernon Lee, was aware of and accommodated his 1997 work injury.

Lee testified that claimant was "just like everybody else, he was a journeyman carpenter." Lee saw claimant working on six-foot ladders and scaffolding. Lee testified that claimant worked on a Baker's scaffold that rises to a height of approximately six feet. In order to work on a Baker's scaffold, an individual must step on round rungs and climb. Lee stated that with respect to lifting requirements while claimant worked at Stanley Fixtures "[a] lot of this stuff is pretty heavy. . . . There is some light stuff, but most of it is pretty heavy and its takes two or three people to pick up some

of it to put it on a dolly or something like that to roll it to where you are going to install it." Lee stated that some things "probably weighed two or 300 pounds." Contrary to claimant's testimony, Lee denied providing claimant any special accommodations. Lee also denied that he knew of claimant's 1997 work injury. Lee was not aware that anyone helped claimant on the job.

Dr. Tushar Gajjar, who began treating claimant in February 2000, reported in a March 22, 2000 office note that claimant had a scar on his nose, reportedly sustained when he was fixing gutters at his mother's residence. In a May 11, 2000 office note, Dr. Gajjar reported that claimant did not appear to have an obvious alteration of his gait while walking into or out of the examination room. Dr. Gajjar noted that at that time claimant reported walking distances up to one and one-half miles. In his April 15, 2001 report, Dr. Gajjar noted that claimant had undergone diagnostic procedures, which resulted in non-physiologic responses. Dr. Gajjar noted that claimant has given "indications on past visits that he is essentially unlimited in activity levels and there has been no worsening of atrophy in the lower extremity."

Based upon this evidence, the commission concluded as follows:

> [T]he evidence demonstrates that the claimant's treating physician had imposed significant restrictions on the claimant's

- 4 -

ability to work beginning May 12, 1999. However, the evidence also clearly shows that the claimant ignored those work restrictions and performed physically demanding work of a nature akin to his pre-injury employment. There is no evidence that the claimant attempted to find or perform work within the bounds of the restrictions placed by his physician.

We find that the claimant's conduct in performing such work is superior evidence of his actual physical capacity than the medical reports that imposed the work restrictions. Since the claimant's actual conduct during the period from May 12, 1999, through August 31, 1999, demonstrated that he was able to perform work substantially similar to his pre-injury employment, the Act precludes us from awarding compensation for temporary partial incapacity during that period.

In light of Dr. Gajjar's medical records, evidence of claimant's actual performance of work that exceeded his restrictions during the claimed time periods, and Lee's testimony, we cannot find as a matter of law that claimant's evidence proved he sustained a change-in-condition as of May 12, 1999, entitling him to an award of TTD or TPD benefits.

## II. Marketing

Because we affirm the commission's ruling that claimant failed to meet his burden of proving a change-in-condition, we need not address the marketing issue.

## III. Back Condition

In ruling that claimant failed to prove that his back condition was a compensable consequence of his compensable

- 5 -

September 26, 1997 left heel injury, the commission found as
follows:

> Dr. . . . Durica noted on September 8, 1999,
> that the claimant's back pain, which had
> begun in April 1999 after a trial use of a
> cast on his foot, was probably the result of
> "gait problems due to his protection of the
> left leg."  The claimant did not treat with
> Dr. Durica after September 1999, and began
> pain management treatment with Dr. . . .
> Gajjar in February 2000.  Dr. Gajjar noted
> on April 18, 2001, that the claimant had not
> complained of back pain to him during his
> treatment.  Thus, we agree with the deputy
> commissioner that the claimant did not prove
> that his back problems were the result of
> the 1997 injury, especially considering that
> the claimant's treating physician during
> 2000 did not observe any back problems or
> note any back problems.

"Medical evidence is not necessarily conclusive, but is
subject to the commission's consideration and weighing."
Hungerford Mechanical Corp. v. Hobson, 11 Va. App. 675, 677, 401
S.E.2d 213, 215 (1991).  As fact finder, the commission was
entitled to give little weight to Dr. Durica's opinion in light
of the evidence that he had not treated claimant since September
1999 and that claimant's back pain did not begin until more than
one and one-half years after the compensable foot injury.

The commission relied upon the response of Dr. Gajjar to
employer's counsel's April 11, 2001 questionnaire, in which he
indicated that he could not relate claimant's back condition to
his compensable 1997 foot injury.  Even if we were to assume, as
claimant argues, that the commission erroneously relied upon

Dr. Gajjar's opinion because it was based upon his incorrect assumption that claimant did not complain of back pain during his treatment, the commission's finding is binding and conclusive upon us. Absent Dr. Durica's opinion, which the commission, as fact finder, was entitled to reject, the record contains no credible evidence of a causal connection between claimant's back condition and his September 26, 1997 compensable foot injury. Accordingly, we cannot find as a matter of law that claimant's evidence sustained his burden of proof.

For these reasons, we affirm the commission's decision.

Affirmed.
