# Alexandria
## ALLEGHENY AIRLINES, INC.
v.
## DIANE COLLINS MERILLAT
No. 0524-91-4
Decided April 14, 1992

342

COUNSEL

Benjamin J. Trichilo (Lewis, Trichilo & Bancroft, P.C., on brief), for appellants.

Craig A. Brown (Ashcraft & Gerel, on brief), for appellee.

OPINION

ELDER, J.—Allegheny Airlines, Inc. (now U.S. Air) and Twin City Fire Insurance Co. appeal from an award of temporary total disability benefits by the Industrial Commission. On appeal, appellants assert that the full commission erred: (1) when it failed to hold that principles of res judicata and collateral estoppel barred compensation, where an earlier claim for compensation based on the same injury but for different time periods was rejected; and (2) when it entered an award of temporary total disability benefits where there was no evidence of wage loss and claimant allegedly did not meet the statutory requirements for total disability. For the reasons stated herein, we affirm.

Diane Collins Merillat, claimant, sustained shoulder and neck injuries on August 11, 1978, while employed as a flight attendant at an average weekly wage of $330. Allegheny Airlines has paid disability benefits for various periods following her injury. In a prior proceeding, claimant sought compensation for total work incapacity for various periods in 1988. On July 10, 1989, the deputy commissioner held that, because claimant's average weekly wage was in excess of that which existed at the time of the injury, she could show no wage loss, a prerequisite to any award for temporary total disability benefits.

This appeal arises from an award of temporary total disability benefits for various periods in 1989 and 1990. The records of claimant's treating physician, Dr. Kent A. Peterson, were made a part of the record. They indicate that, prior to or during the periods for which claimant was later awarded compensation, Dr. Peterson advised claimant that she should not work. At a post-hearing deposition, Dr. Peterson indicated that claimant may have been capable of performing restricted work during the periods claimed; yet he also stated that "when I saw her I told her to go off work and rest."

In a September 26, 1990 opinion, the deputy commissioner awarded benefits for the periods in 1989 and 1990. The deputy commissioner held that the July 10, 1989 decision of the Industrial Commission was not binding and that principles of res judicata did not apply because "the periods of disability claimed and adjudicated are not the same." The full commission agreed with the deputy commissioner and affirmed. On appeal, appellants contend that the legal holdings in the commission's July 10, 1989 opinion have preclusive effect in the more recent proceedings.

■ A judicially created doctrine, res judicata "rests upon considerations of public policy which favor certainty in the establishment of legal relations, demand an end to litigation, and seek to prevent the harassment of parties." *Bates v. Devers*, 214 Va. 667, 670, 202 S.E.2d 917, 920 (1974) (citations omitted). While the doctrine " 'is firmly established in our jurisprudence and should be maintained where applicable,' " *id.* (quoting *Ward v. Charlton*, 177 Va. 101, 115, 12 S.E.2d 791, 796 (1941)), we find that in the present case the doctrine does not apply.

■ Of the four preclusive effects encompassed by the term "res judicata," collateral estoppel is that which impacts "in a subsequent action based upon a collateral and *different cause of action.*" *Id.* at 671, 202 S.E.2d at 921 (emphasis in original).[1] The action brought by claimant in this case is a "different cause of action" than that decided by the Industrial Commission on July 10, 1989, as claimant's case rests on different proof. Even so, the doctrine of collateral estoppel does not bar claimant's cause of action.

---

[1] The other three preclusive effects, merger, direct estoppel, and bar, are not applicable here.

"The true test of the conclusiveness of a former judgment with respect to particular matters is identity of issues. If a particular point or question is in issue in the second action, and the judgment will depend on the determination of the particular point or question, a former judgment between the same parties will be final and conclusive in the second [action] if that same point was in issue and adjudicated in the first suit."

*Graham v. Virginia Elec. & Power Co.*, 230 Va. 273, 277, 337 S.E.2d 260, 263 (1985) (quoting *Storm v. Nationwide Mut. Ins. Co.*, 199 Va. 130, 134, 97 S.E.2d 759, 761 (1957)) (citations omitted). "[A]n appropriate test for determining the identity of issues involved in former and subsequent actions is 'whether the same evidence will support both actions.'" *Id.* (quoting *Pickeral v. Federal Land Bank*, 177 Va. 743, 751, 15 S.E.2d 82, 85 (1941)).

Because the periods of disability claimed are not the same, and because the medical evidence relied on for the more recent claims is different from that relied on for the earlier claims where different periods of disability were at issue, the doctrine of collateral estoppel does not control determination of this case.

Appellants also claim that the commission erred in entering an award of temporary total disability benefits where there was no evidence of wage loss and claimant's disability was allegedly not total.

As a preliminary matter, we dismiss appellants' assertion that claimant was not totally disabled during the periods for which she claimed benefits. In making this assertion, appellants have relied on *post*-hearing testimony of claimant's treating physician. This testimony indicated that claimant could 'have performed light work during the periods of disability at issue. However, the doctor also stated that, contemporaneous with each period of disability, he told claimant not to work but instead to rest. The doctor did not at these times even discuss with claimant the possibility of light work. The evidence established that claimant's disability for the periods claimed was total.

Appellants further contend that Code § 65.1-54 requires wage loss. Appellants are presumably referring to the language of the

commission's July 10, 1989 decision, where the commission held that "compensation could only be awarded when the employee's weekly earnings are reduced below his pre-injury average weekly wage as a result of injuries sustained in the industrial accident."[2] Code § 65.1-54 contains no such requirement. The only precedent cited by appellants in support of their position is that found in *J. A. Foust Coal Co. v. Messer*, 195 Va. 762, 80 S.E.2d 533 (1954). There, the Supreme Court interpreted Code §§ 65-51 and 65-52, predecessors to Code §§ 65.1-54 and 65.1-55, and held that "[b]enefits awarded under §§ 65-51 and 65-52 cover losses occasioned by the impairment of the claimant's earning capacity." *Id.* at 766, 80 S.E.2d at 535. *Foust* does not hold that the earning impairment suffered by claimant must be considered in relation to pre-injury earnings.

Finally, appellants argue that claimant's wage loss cannot be calculated on a daily basis. While it is true that Code § 65.1-54 requires that an employer compensate a totally incapacitated employee at a "weekly compensation" rate, there is no requirement of a minimum of one week's incapacity. As long as the manner in which the wage loss for a period of disability of less than one week is calculated as an appropriate fraction of the weekly compensation rate, the requirement of the statute is satisfied.

For the reasons stated, we affirm the decision of the commission.

*Affirmed.*

Baker, J., and Duff, J., concurred.

---

[2] For reasons already discussed, principles of res judicata do not require that the July 10, 1989 decision of the Industrial Commission controls this case.