*484 PETTY, J.,
dissenting.
An injured employee is entitled to receive compensation when his “incapacity for work resulting from [an] injury is partial ... during such [period of] incapacity.” Code § 65.2-502. Today the majority has appended an additional prerequisite to the receipt of compensation—the employee must also establish that his loss of wages was not due to economic conditions that similarly impacted able-bodied employees. It then proceeds to announce, out of whole cloth, five factors to consider in applying its “same economic conditions” test.[4] In doing so, the majority, in my opinion, ignores both existing precedent and legislative intent and effectively alters both the spirit and the letter of the Worker’s Compensation Act. Accordingly, I dissent.
I believe that this case is primarily a question of statutory interpretation. This Court reviews such a question de novo. Town of Waverly Law Enforcement v. Owens, 51 Va.App. 277, 280, 657 S.E.2d 161, 163 (2008). When interpreting a statute, this Court must consider the statute’s language “to determine the General Assembly’s intent from the plain and natural meaning of the words used.” Alcoy v. Valley Nursing Homes, Inc., 272 Va. 37, 41, 630 S.E.2d 301, 303 (2006). “[W]ords are to be given their ordinary meaning, unless it is apparent that the legislative intent is otherwise.” Phelps v. Commonwealth, 275 Va. 139, 142, 654 S.E.2d 926, 927 (2008). And, “[this Court] must assume that ‘the legislature chose, with care, the words it used when it enacted the relevant statute, and we are bound by those words as we interpret the statute.’ ” Rasmussen v. Commonwealth, 31 Va.App. 233, 238, 522 S.E.2d 401, 403 (1999) (quoting Frazier v. Dep’t of Soc. Servs., Div. of *485 Child Support Enforcement ex rel. Sandridge, 27 Va.App. 131, 135, 497 S.E.2d 879, 881 (1998)). Moreover, it is this Court’s “ ‘duty ... to interpret the several parts of a statute as a consistent and harmonious whole so as to effectuate the legislative goal.’ ” Oraee v. Breeding, 270 Va. 488, 498, 621 S.E.2d 48, 52 (2005) (quoting Va. Elec. & Power Co. v. Bd. of Cnty. Supervisors, 226 Va. 382, 387-88, 309 S.E.2d 308, 311 (1983)). “Thus, [this Court] “will look to the whole body of [a statute] to determine the true intention of each part.’ ” Ford Motor Co. v. Gordon, 281 Va. 543, 549, 708 S.E.2d 846, 850 (2011) (quoting Oraee, 270 Va. at 498, 621 S.E.2d at 52-53).
I find it significant that despite this Court’s obligation to give effect to the intent of the legislature, the majority barely mentions the language of Code § 65.2-502 or any other section of the Workers’ Compensation Act. Instead, the majority dwells upon what it perceives as factual similarities in several relevant cases without analyzing what those cases have to say precisely about Code § 65.2-502. As with any question of statutory interpretation, this Court’s inquiry should begin with the plain language of the statute itself. Surles v. Mayer, 48 Va.App. 146, 163, 628 S.E.2d 563, 571 (2006).
Under Code § 65.2-502, a claimant receives a payment designed to offset his “incapacity for work resulting from [his] injury” by paying him two thirds of the difference between his pre-injury average weekly wage and “the average weekly wage which he is able to earn thereafter.”[5] (Emphasis added). This compensation is to be paid “during such incapacity.” Id. (emphasis added). In lieu of these payments, however, the employer may provide his employee with selective employment—that is, a job the employee can perform even *486 though partially disabled, at wages equal to his previous wage. See Metro Mach. Corp. v. Lamb, 33 Va.App. 187, 196-97, 532 S.E.2d 337, 341 (2000). In such a case, the employee is not entitled to compensation—not because he is no longer suffering a disability, but because the difference between his preinjury wages and the amount he is able to earn subsequent to the injury is zero. See id. However, once the employer ceases—for whatever reason—to take advantage of this accommodation, it must return to paying benefits to the worker so that he continues to receive payment for his pre-existing diminished earning capacity. Id.
This Court has already recognized these principles in Metro Mach. Corp. v. Lamb. There, this Court addressed an argument very similar to that presented by the employer in this case—that an employee, who was laid off from his light-duty employment as the result of a plant shutdown, and not as the result of a work-related injury, was not entitled to benefits due to the shutdown. Id. at 196, 532 S.E.2d at 341. This Court firmly rejected that argument, stating:
The employer’s reasons for the layoff should not diminish the employee’s entitlement to benefits. The employee was injured on the job and his capacity to work reduced. The Workers’ Compensation Act “is highly remedial and should be liberally construed to advance its purpose ... [of compensating employees] for accidental injuries resulting from the hazards of the employment.” See Henderson v. Central Tel. Co., 233 Va. 377, 382, 355 S.E.2d 596, 599 (1987) (citations omitted). Until the employee can perform at his pre-injury capacity, he is protected from the economic vicissitudes of the market place.
Id. at 196-97, 532 S.E.2d at 341 (emphases added). Accordingly, “[a]fter an economic layoff from selective employment, an employee remains entitled to benefits until he either fully recovers and is released to pre-injury work, or until the employer offers him other selective employment.” Id. at 196, 532 S.E.2d at 341. Thus, this Court held that “the employee’s layoff due to the employer’s economic downturn does not *487 preclude his entitlement to disability benefits.” Id. at 197, 532 S.E.2d at 341.
Given our decision in Lamb, I can see no reason why we ought to do anything but affirm the commission’s award of benefits in this case. The majority acknowledges the fact that Testerman is a “partially incapacitated employee,” supra at 483, 711 S.E.2d at 236, but simply does not think it a good policy to give what it views as a windfall payment for wages to an employee that the employee would not have otherwise earned even if he had not suffered an industrial injury. The entire purpose of the majority’s new test is to give effect to this policy decision. Yet, the legislature made a certain policy choice, and it is that decision we must honor. That policy compensates an injured employee for his diminished earning capacity. See, e.g., J.A. Foust Coal Co. v. Messer, 195 Va. 762, 765-66, 80 S.E.2d 533, 535 (1954) (stating that an employer must pay benefits for partial incapacity to compensate a worker for his “loss of earning power,” or “the impairment of the claimant’s earning capacity” (emphases added)); Bay Concrete Constr. Co. v. Davis, 43 Va.App. 528, 539, 600 S.E.2d 144, 150 (2004) (explaining that partial incapacity benefits are calculated by considering the average weekly wage the claimant “is able to earn ” (emphasis added)); Pilot Freight Carriers v. Reeves, 1 Va.App. 435, 441, 339 S.E.2d 570, 573 (1986) (stating that benefits under Code § 65.1-55 (now Code § 65.2-502) cover “losses occasioned by the impairment of the claimant’s earning capacity ” (emphasis added)).
By paying an injured employee for his diminished earning capacity, the legislature necessarily chose not to make the worker whole for wages that his industrial injury otherwise prevented him from earning, as the majority’s theory suggests, but instead chose to pay him for a more abstract loss. See Pilot Freight Carriers, 1 Va.App. at 440, 339 S.E.2d at 572. This Court explained this distinction in Pilot Freight Carriers. It first recognized that “[t]he degree of disability under Code § 65.1-55 [now Code § 65.2-502] is determined by comparing average weekly wages which the employee actually earns before the injury and the average weekly wage that he *488 is able to earn after the injury.” Id. Quoting an earlier version of the same treatise cited by the majority, this Court then stated that:
“It is at once apparent that the two items in the comparison are not quite the same. Actual earnings are a relatively concrete quantity.... Earning capacity, however, is a more theoretical concept. It obviously does not mean actual earnings, since the legislature deliberately chose a different phrase for the post-injury earnings factor.... But the concept of wages he ‘is able’ to earn cannot mean definite actual wages alone, especially in the absence of a fixed period of time within which post-injury wages are to be taken as controlling.”
Id. (alterations in original) (quoting 2 A. Larson, The Law of Workmen’s Compensation § 57.21 (1980)).[6]
Indeed, the cases cited by the majority acknowledge that economic conditions do not prevent a claimant from receiving compensation for his diminished earning capacity, even if those economic conditions result in the claimant’s unemployment. Metro Mach. Corp. v. Sowers, 33 Va.App. 197, 210, 532 S.E.2d 341, 347 (2000) (stating that “ ‘the employer’s financial condition and the availability of alternative work do not affect *489 the claimant’s right to compensation due to an impaired capacity to perform his pre-injury duties’ ” (quoting Consol. Stores Corp. v. Graham, 25 Va.App. 133, 137, 486 S.E.2d 576, 578 (1997))); Carr v. Va. Elec. & Power Co., 25 Va.App. 306, 487 S.E.2d 878 (1997) (stating that “ ‘[t]he threshold test for compensability is whether the employee is able fully to perform the duties of his pre-injury employment’ ” (quoting Celanese Fibers Co. v. Johnson, 229 Va. 117, 120, 326 S.E.2d 687, 690 (1985)) (emphasis added)).[7] The majority asserts that these cases stand for the proposition that an unemployed claimant’s entitlement to benefits under Code § 65.2-502 depends upon the causal relationship between the unemployment and the claimant’s industrial injury, as determined by the wage loss suffered by the claimant in relation to similarly situated non-restricted employees. Supra at 482-83, 711 S.E.2d at 235-36.
The majority misunderstands these cases. These cases make such a comparison not because such a causal relationship is required under the statute, but because such a comparison appropriately demonstrated the extent of the claimant’s incapacity for work, or his inability to earn wages, in those particular cases. See Sowers, 33 Va.App. at 208-09, 532 S.E.2d at 347; Graham, 25 Va.App. at 136-37, 486 S.E.2d at 577-78; Carr, 25 Va.App. at 310-12, 487 S.E.2d at 880-81. In every one of those cases, this Court affirmed the commission’s award of benefits to the claimant despite the fact that, due to economic conditions, the injured employee suffered no wage loss over and above the wage loss of other employees; rather, the injured employee in each of those cases had a diminished *490 earning capacity as the result of his industrial injury, and that is what entitled him to benefits. See Sowers, 33 Va.App. at 208-09, 532 S.E.2d at 347; Graham, 25 Va.App. at 136-37, 486 S.E.2d at 577-78; Carr, 25 Va.App. at 310-12, 487 S.E.2d at 880-81. Because we affirmed the awards of benefits in those cases, precedent directs that we do the same in this case.
I am further persuaded that today’s decision by the majority is in error because it is inconsistent with our case law interpreting Code § 65.2-500. This is significant because Code § 65.2-500 pays benefits based on total “incapacity for work,” just as Code § 65.2-502 pays benefits based on partial “incapacity for work.” Thus, these two sections differ only in the degree of incapacity for which they compensate the claimant, not the policy upon which the award is based. See, e.g., Pilot Freight Carriers, 1 Va.App. at 441, 339 S.E.2d at 573 (explaining that partial incapacity benefits and total incapacity benefits both “cover losses occasioned by the impairment of the claimant’s earning capacity”). This Court has already held that a claimant is entitled to benefits for total incapacity even though it could not be said that, but for his injury, the claimant lost wages. Allegheny Airlines v. Merillat, 14 Va.App. 341, 344-45, 416 S.E.2d 467, 469-70 (1992). In Allegheny Airlines, this Court explicitly rejected an employer’s contention “that Code § 65.1-54 [ (now Code § 65.2-500) ] requires wage loss [as the result of an industrial injury],” holding that the statute “contains no such requirement.” Id. at 344-45, 416 S.E.2d at 469-70. Instead, “compensation under [Code] § 65.2-500 is predicated upon the effect of the injury on the [claimant’s] capacity to earn wages.”[8] Lawrence J. Pascal, Virginia Workers’ Compensation, Law and Practice § 5.05 (3d ed.2000) (citing to Allegheny Airlines generally).
Since the theory for payment under Code §§ 65.2-500 and 65.2-502 is the same, we should read the two sections in *491 harmony. Indeed, by holding as it does today, the majority creates a peculiar scheme. If a claimant has absolutely no ability to work, he is entitled to benefits even if he cannot prove that, but for his injury, he would have continued to earn the same (or any) wages after his injury. See Code § 65.2-500; Allegheny Airlines, 14 Va.App. at 344-45, 416 S.E.2d at 469-70. However, if a claimant has a partial incapacity for work resulting from an industrial injury, he is not entitled to benefits for that partial incapacity unless he can prove that, but for his injury, he would have otherwise continued to receive wages. This inconsistency, of course, never arises if Code §§ 65.2-500 and 65.2-502 are read harmoniously, as this Court is obligated to do. See Oraee, 270 Va. at 498, 621 S.E.2d at 52.
For these reasons, I cannot adopt the majority’s view. Therefore, I must also reject the majority’s additional rule that a claimant must prove his disability was the reason he was unable to market his remaining capacity for work.[9] Instead of the rule espoused by the majority today, I would consider the commission’s award of benefits in light of its well-established role as fact-finder to “compare the claimant’s preinjury average weekly wage to the wage he is able to earn after the injury to determine whether he is entitled to total or partial disability benefits and, if so, at what rate.”[10] Bay *492 Concrete Constr. Co., 43 Va.App. at 539, 600 S.E.2d at 150. Finally, in reaching this conclusion, I am ever mindful of the fact that
the purpose of the Workers’ Compensation Act is to provide compensation to an employee for the loss of his opportunity to engage in work, when his disability is occasioned by an injury suffered from an accident arising out of and in the course of his employment. The Act should be liberally construed in harmony with its humane purpose.
Sowers, 33 Va.App. at 209, 532 S.E.2d at 347 (quoting USAir, Inc. v. Joyce, 27 Va.App. 184, 189, 497 S.E.2d 904, 906 (1998)).
Here, the commission determined that Testerman was incapable of performing his original duties due to a work-related injury, resulting in a diminished earning capacity. Accordingly, he was entitled to compensation. The employer was permitted to terminate that compensation when it provided him selective employment consistent with his incapacity at his previous wage. The employer then, for its own economic benefit, ended that selective employment. However, “[a]fter an economic layoff from selective employment, [such] an employee remains entitled to benefits until he either fully recovers and is released to pre-injury work, or until the employer offers him other selective employment.” Lamb, 33 Va.App. at 196, 532 S.E.2d at 341. Because neither alternative is the case here, I conclude that Testerman was entitled to a reinstatement of compensation for his injury. Therefore, I would affirm the commission.

. The majority has announced five specific factors to consider in the application of its newly minted wage loss test. Supra at 481-82, 711 S.E.2d at 235. Significantly, however, it fails to point to any portion of the Act to support these factors, leaving one to conclude that they must have been gleaned from the " 'penumbras and emanations' of [the Act].” Carpenter v. Commonwealth, 51 Va.App. 84, 96, 654 S.E.2d 345, 351 (2007) (quoting LaRoche v. Wainwright, 599 F.2d 722, 726 (5th Cir.1979)).

. The section goes on to describe a process for calculating the claimant’s average weekly wage after the injury under certain special circumstances. See Code § 65.2-502(A) (setting forth an elaborate formula for calculating the average weekly wage after the injury in the presence of potentially volatile income earned by or from "commissioned employees, self-employed income, and income derived from an employer in which the injured worker or their immediate family has an ownership interest”).

. Other states with statutes similar to Code § 65.2-502 have recognized this same distinction between lost wages and loss of earning capacity. See, e.g., Hendricks v. Am. Stores, 809 P.2d 1076, 1078 (Colo.App.1990) (stating that Colorado pays temporary partial disability benefits based on a worker’s "impairment of his earning capacity,” which "means the loss of ability to earn, not simply lost wages”); Harle v. Work. Comp. App. Bd., 540 Pa. 482, 658 A.2d 766, 769 (1995) (stating that Pennsylvania pays partial disability benefits based on the "earning power” of the employee after his injury, which may be different than the amount "the employee is receiving in actual wages after the injury”); see also West Point Pepperell v. Green, 148 Ga.App. 625, 252 S.E.2d 55, 56 (1979) (holding that compensation should not be denied based on a plant shutdown in light of the fact that Georgia determines partial disability benefits based on "the difference between [a worker's] average weekly wage before the injury and the average weekly wage she was able to earn thereafter”); cf. Shaw Indus., Inc. v. Shaw, 262 Ga.App. 586, 586 S.E.2d 80, 82 (2003) (suggesting that the worker’s "actual post-injury wages” are relevant, although not necessarily dispositive, to determine the amount a worker is "able to earn” after being injured).

. The majority also cites Rodriguez v. Stouffer Concourse Hotel, No. 160-73-71, 1998 VA Wrk. Comp. LEXIS 3984 (Dec. 21, 1998), in support of its conclusion. My response is two-fold. First, we are not bound by opinions of the commission. NiSource, Inc. v. Thomas, 53 Va.App. 692, 711, 674 S.E.2d 581, 591 (2009). Second, and more importantly, the commission itself, in this very case, has abandoned the reasoning expressed in Rodriguez in light of our more recent controlling opinions in Sowers and Lamb. See Testerman v. Util. Trailer Mfr. Co., No. 226-77-65, 2010 VA Wrk. Comp. LEXIS 290, at *3-4 (June 9, 2010) (analyzing this Court’s decision in Sowers in making its decision).

. At oral .argument, the employer agreed that had Testerman been receiving temporary total disability benefits instead of working a light-duty job, he. would have been entitled to receive compensation throughout the layoff.

. I must note that a claimant's initial entitlement to benefits under Code § 65.2-502, despite economic conditions that preclude actual wage loss, should not be confused with the separate question as to whether the claimant has subsequently lost his entitlement to those benefits by failing to take reasonable efforts to market his residual work capacity. See Herbert Bros., Inc. v. Jenkins, 14 Va.App. 715, 717, 419 S.E.2d 283, 284 (1992) ("In order to continue to receive benefits under the Workers’ Compensation Act, a claimant who has been injured in a job-related accident must market his remaining capacity to work.”) Of course, since the parties stipulated that the claimant here had reasonably marketed his residual capacity, there is no need to analyze this issue.

. Here, the claimant testified that he had continued to work while the plant was shut down during prior inventories and that some of his coworkers remained employed during this shutdown. The majority, however, has chosen to adopt those facts that support its conclusion by *492 accepting the competing testimony of the claimant's manager, supra at 476-77, 711 S.E.2d at 232-33, despite this Court's obligation to examine the facts in the light most favorable to the claimant, who prevailed below. Crisp v. Brown's Tysons Corner Dodge, Inc., 1 Va.App. 503, 504, 339 S.E.2d 916, 916 (1986). Nevertheless, the facts, as they are, seem to require further examination by the fact-finder to evaluate the new factors listed by the majority. Thus, even if I were to agree with the rule set by the majority, I would still remand for further proceedings because of the fact-finding necessarily required by that rule.